UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REPUBLIC ENGINEERED PRODUCTS, INC., | ) ) ) | CASE NO.:  5:05CV2852 |
| Plaintiff, | ) ) | JUDGE JOHN ADAMS |
| v. | ) ) | **ORDER AND DECISION** |
| EULER AMERICAN CREDIT INDEMNITY COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter comes before the Court on Motion by Plaintiff Republic Engineered Products, Inc. ("Republic") for Partial Summary Judgment.  (Doc. #47)  Defendant filed an Opposition to the Motion.  (Doc. #72)  A Reply brief was filed thereafter.  (Doc. #77)  The sole issue addressed in the Motion is whether Defendant's asserted affirmative defense fails as a matter of law.  The Court has been advised having reviewed the parties' filings, exhibits and applicable law.  It is hereby determined that Plaintiff's Motion is DENIED.

**FACTS**

It is first noted that facts and all reasonable inferences are to be construed in a manner most favorable to the nonmoving party.  *Detroit Water Team Joint Venture v. Agric. Ins. Co.*, 371 F.3d 336, 338 (6th Cir.2004).

Republic is a producer of special bar quality steel in North America.  This steel is used primarily for automotive markets.  One of Republic's top customers was a company called Jernberg Industries, Inc. ("Jernberg").  From 2004 through 2005, Jernberg had a

consistent outstanding balance with Republic which was between $10 million and $15 million.  Despite the two's agreed 30-day term for invoices, Jernberg was paying its invoices approximately 85 days past invoice and 55 days past due during this time.

In early 2005, Joseph F. Lapinsky, then the CEO of Republic, introduced Jernberg to Michael Psaros, a principal in KPS Situations Fund ("KPS"), an entity that acquires financially distressed businesses.  KPS entered into negotiations to purchase Jernberg due to its financial situation.  On May 30, 2005, Jernberg and KPS entered into a letter of intent ("LOI") which provided for reorganization rather than bankruptcy.  This LOI referenced KPS's need to negotiate with Republic about; (1) compromising or deferring a portion of its $16 million account receivable, and (2) reducing the price of steel charged by Republic to the new company going forward.

Despite this LOI, Jernberg filed for bankruptcy on June 29, 2005.  KPS purchased the Jernberg assets out of bankruptcy.  It did not, however, purchase the debts of Jernberg.  In the bankruptcy, Republic filed a claim against the bankruptcy estate for the outstanding receivable in the amount of $14,469,321.91.  Republic established a reserve for the full amount of the bad debt and has not received any payment out of the Jernberg bankruptcy to this date.

Perry Capital ("Perry")was the then owner of Republic.  Perry negotiated a supply agreement with KPS on behalf of Republic.  The two negotiated.  Plaintiff contends that the supply agreement was made because KPS could not obtain steel elsewhere due to a tight market and could not afford to negotiate with a new vendor due to time and lost revenue.  Plaintiff alleges that it was because of this that Republic had significant leverage over KPS in negotiations of the supply agreement. KPS, through a

company called Hephaestus Holdings, Inc. ("HHI") entered into a Supply Agreement with Republic. The terms of the Agreement required a $7 million up-front payment (to be amortized over the term of the Agreement), three-year term, a continuation of the same $10/ton rebate previously provided to Jernberg, the sale of steel at the same prices previously sold to Jernberg, 15-day payment terms, and $2 million in credit.

Defendant Euler American Credit Indemnity Company ("Euler") sells commercial credit insurance. This insurance protects the insured from the nonpayment of amounts due from a covered buyer. Euler sets, in its policies, a credit limit permitted for each buyer.

Euler sold a commercial credit insurance policy to Republic to cover Jernberg. Euler contends that if any judgment is rendered against it for payments owed, it is entitled to a set off of that amount based on Section V (C)(4) which states,

> If the **Gross Invoice Value** exceeds the **Credit Limit** for that **Buyer** under this Policy, the above deductions in *Section V.C.3.* above will be made from the **Credit Limit** pro-rata based on the ratio between the amount covered by us under this Policy and the **Gross Invoice Value**, the resulting amount being the **Net Invoice Value**.

Plaintiff's Motion for Partial Summary Judgment, exhibit I, p. 5. The deduction at issue, referred to in this section, is Section V (C)(3)(a) which states,

> All amounts collected after the date of claim filing from the **Buyer** on account the unpaid obligation or otherwise, and all amounts obtained from any other source on account of the unpaid obligation;

*Id.*

The credit limit for Jernberg in the policy was $2 million. The amount of the outstanding debt was approximately $14.5 million. The affirmative defense, based on the above sections of the insurance contract, is stated in the Answer as:

> Pursuant to the policy, the amount paid by HHI to Republic was on account of the unpaid obligation from Jernberg, and therefore, the net invoice value is calculated by deducting from the credit limit an amount equal to the payment multiplied by the ratio of the amount covered under the policy to the gross invoice value.

Euler's Answer, p.4.  Therefore, Defendant is claiming that it is permitted to set-off any amount it is found to be liable by the $7 million up-front payment made to Republic from HHI.

## STANDARD OF REVIEW

Summary Judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).  The moving party must demonstrate to the court, through reference to pleadings and discovery responses, the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  This is so that summary judgment can be used to dispose of claims and defenses, which are factually unsupported.  *Id.* at 324.  The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried.  *Id.*  The court's inquiry at the summary judgment stage is to determine "whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.  However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. 242, 247-48 (1986) (emphasis

in original).  "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the non-moving party.'"  *McMillian v. Potter,* 130 Fed.Appx. 793, 796 (6th Cir. May 11, 2005) (quoting *Anderson,* 477 U.S. at 248).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e).  *See Celotex,* 477 U.S. at 324.  The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves . . . ."  *Id.*  Rule 56(c) states, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  However, "only admissible evidence may be considered when ruling on a motion for summary judgment.  *Wiley v. United States,* 20 F.3d 222, 225 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988)).  A scintilla of evidence in favor of the nonmoving party is not sufficient.  *Anderson,* 477 U.S. at 252.

As a general matter, a district court considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."  *Anderson,* 477 U.S. at 248.  The court cannot consider non-material facts, nor can it weigh material evidence to determine credibility or the truth of the matter.  *See id.* at 249.  The court's sole function is to determine whether there is a genuine fact for trial.  *Id.*  This does not exist unless "there is sufficient evidence favoring

the nonmoving party for a jury to return a verdict for [that] party." *Id.* In sum, a proper summary judgment analysis asks whether a trial is necessary. It is additionally noted that a district court may properly grant summary judgment on grounds not raised in the motions, provided no genuine issue of material fact remains. *Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1150 (6th Cir. 1988).

A federal court sitting in diversity must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir.2000). In this case, Ohio law governs. The Supreme Court of Ohio stated that "[I]nsurance contracts must be construed in accordance with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992), cert. denied, 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993). The Ohio high court further instructed that "words and phrases used in an insurance policy must be given their natural and commonly accepted meaning ⋯ to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 436 N.E.2d 1347, 1348 (1982).

## DISCUSSION

The phrase at issue in this Motion is, "on account of." Plaintiff attempts to remove the term "account" from the phrase it is used in and base its argument on the definition of that specific word. However, to do so would take the term and phrase out of context. Additionally, it would be unreasonable for this Court to interpret the term without looking to how it is used in the sentence.

This Court agrees with Defendant that the common sense definition of the terms "on account of" is "because of." The following is just a small sample of the numerous cases where this Circuit alone has used the phrase "on account of" to mean "because of." *See Dashi v. Gonzales,* 2007 WL 177915 (6th Cir. 2007) (stating, "[a] refugee is any person who is outside of the country of such person's nationality or last habitual residence and who is unable or unwilling to return to that country because of persecution or a well-founded fear of persecution *on account of* race, religion, nationality, membership in a particular social group, or political opinion.)(emphasis added); *Hensley v. Commissioner of Social Sec.,* 2007 WL 162997 (6th Cir. 2007) (stating, "Hensley is less than five feet, three inches tall. She suffers from a variety of debilitating ailments *on account of* her obesity.") (emphasis added); *U.S. v. Gallatin,* 2006 WL 3539262 (6th Cir. 2006) (stating, "Nor has Gallatin shown that the district court abused its discretion by declining to depart downward *on account of* his 'post-conviction rehabilitation.'") (emphasis added); *Scarbrough v. Morgan County Bd. of Educ.,* 470 F.3d 250 (6th Cir. 2006) (stating, "…Scarbrough has a constitutional right to express his religious beliefs without being subjected to adverse action *on account of* his expression.") (emphasis added). Therefore, the Court finds no ambiguity in the contract and thus will give the terms of the contract their natural and commonly accepted meaning as required by Ohio common law.

## CONCLUSION

Because the Court finds that Plaintiff's interpretation of the contract terms is unreasonable, and because a jury could conclude that the $7 million up-front payment made to Plaintiff from HHI was "because of" the $14.5 million dollar debt Republic was faced with from Jernberg, it is determined that the affirmative defense does not fail as a

matter of law as alleged by Plaintiff. Therefore, the Motion for Partial Summary Judgment is denied.

  So ordered.

                *s/ Judge John R. Adams*
                JUDGE JOHN R. ADAMS
                UNITED STATES DISTRICT COURT